IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIO CESAR M.J.,

Petitioner,

vs.

CHRISTOPHER CHESTNUT, *et al.*,

Respondents.

Civil No. 1:26-cv-04775-MWJS
ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS IN PART

A# 095-744-987

**INTRODUCTION**

Petitioner Julio Cesar M.J.[1] has been in immigration detention since September 2025. He now petitions for a writ of habeas corpus under 28 U.S.C. § 2241, contending, among other things, that Respondents cannot lawfully continue to detain him without affording him a bond hearing to assess whether his detention is appropriate. Dkt. No. 10 (amended petition). Respondents answer that no bond hearing is needed because Petitioner's detention is mandatory.

In Petitioner's administrative proceedings, the Department of Homeland Security (DHS) has only ever asserted that 8 U.S.C. § 1225 justifies Petitioner's mandatory detention. As this court has held on a number of prior occasions, that

---

[1] For reasons previously explained in *Sergio D.L.S. v. Warden, Cal. City Correctional Ctr.*, No. 1:26-cv-02821-MWJS, 2026 WL 1049713, at *1 n.1 (E.D. Cal. Apr. 17, 2026), only Petitioner's first name and the initials of his last name are used in this order.

assertion is legally infirm. And so Respondents now, for the first time, float a possible alternative ground for mandatory detention: 8 U.S.C. § 1226(c). They invoke this possibility even though they acknowledge that DHS has never charged that ground in administrative proceedings, despite having held Petitioner in custody for over ten months.

As Petitioner observes, if DHS had wished to "classify Petitioner under § 1226(c)," it "kn[e]w how to do so." Dkt. No. 18, at pg. 6. It could have "issue[d] the required custody determination, serve[d] the required notice, and provide[d] the process required by regulation and due process." *Id.* But, Petitioner adds, "[w]hat they cannot do is avoid habeas review of their operative § 1225(b) detention theory by invoking § 1226(c) for the first time in federal court while simultaneously admitting that they never asserted it before the petition was filed." *Id.* The court agrees, and the petition is therefore GRANTED in part.

**BACKGROUND**

Petitioner originally entered the United States without inspection in 2004. In the first few years after his entry—about two decades ago now—he had several encounters with law enforcement. In 2006, he was arrested in Santa Barbara, California, on a felony burglary charge, later reduced to a misdemeanor theft charge for which he was convicted. Dkt. No. 13, at pg. 21. In May 2008, he was arrested and charged with two felony counts of driving under the influence (DUI) causing bodily injury; one count of

felony hit and run causing death or injury, in violation of Cal. Veh. Code § 20001(a); a misdemeanor count of driving without a license; and a traffic infraction. *Id.* at pg. 22. And in July 2008, he was convicted of one of the two felony DUI counts, the felony hit and run charge, and the driving without a license charge. *Id.* at pgs. 22-23. He was sentenced to prison time and probation. *Id.* at pg. 23.

Around the time of his 2008 convictions, Petitioner came to the attention of immigration authorities. And in November 2008, he was voluntarily removed to Mexico. *Id.* at pg. 8.

Petitioner reentered the United States sometime thereafter, again without inspection, and has remained in the country ever since. The record reflects that since his return, he has stayed on the straight-and-narrow. He is now a long-time resident of West Palm Beach, Florida, where he has resided since at least 2013; he has maintained legitimate employment in recent years; and he has raised his three United States citizen children and stepson. His family includes a minor child with Down syndrome and other medical needs who relies upon Petitioner to facilitate medical care. Dkt. No. 10, at pgs. 7-8. He recently applied for "asylum, withholding of removal, protection under the Convention Against Torture, cancellation of removal, and family-based or hardship-related relief." *Id.* at pg. 7.

But in September 2025, Petitioner again came to the attention of immigration authorities. Although the record reflects that Petitioner has not engaged in any criminal

conduct since his return to the United States, he was arrested in Palm Beach County, apparently based on an outstanding California warrant that had been issued in 2009 based on an alleged—and by now quite stale—probation violation.[2] *See* Dkt. No. 13, at pgs. 16-23. California declined to extradite Petitioner to execute the warrant, but immigration authorities took Petitioner into their custody on September 10, 2025. *Id.* at pg. 8. Although Petitioner has not been found to be a danger to the community or a flight risk at a bond hearing—although he has, in fact, not been afforded a bond hearing at all—he has been held in immigration detention through the ten months since his arrest.

## DISCUSSION

In his amended petition, Petitioner contends that his detention violates the Immigration and Nationality Act (INA) and the Due Process Clause of the United States Constitution. He seeks either his immediate release or, alternatively, an order that

[2] More particularly, the record reflects that in September 2025, Petitioner was arrested as an "out-of-state-fugitive" pursuant to Fla. Stat. § 941.02, based on an active warrant "for violation of probation" issued by the Santa Barbara County Sheriff's Office in 2009. Dkt. No. 13, at pgs. 1, 17. But § 941.02 is not itself a criminal charge, and it is not clear from the current record whether the alleged probation violation forming the basis of the 2009 warrant would constitute criminal conduct under California law. *See People v. Leiva*, 297 P.3d 870, 882 (Cal. 2013) (explaining that because a probation violation can only occur during the court-imposed period of probation, a defendant who is "deported when released from custody" may not be "found to be in willful violation of probation" under certain circumstances).

Respondents cannot lawfully continue to detain him without affording him a bond hearing.

Respondents oppose the petition. They principally contend—as DHS has charged—that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), which the government has interpreted to apply to all non-citizens present in the United States without admission. Dkt. No. 13, at pgs. 1-2. But that interpretation has been rejected by courts in this district and others, *see, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases), which have concluded that noncitizens in Petitioner's position are instead detained pursuant to 8 U.S.C. § 1226(a) and are therefore entitled to a bond hearing. The court finds the reasoning of those cases persuasive. And so unless Respondents can provide a factual or legal basis that would distinguish this case from those that the court has found persuasive, Petitioner is detained in violation of the INA and must be afforded a bond hearing. *Accord Galvan v. Noem*, No. 1:25-cv-1766, 2026 WL 183724 (E.D. Cal. Jan. 23, 2026), *report and recommendation adopted*, Dkt. No. 14; *Avalos v. Chestnut*, No. 1:26-cv-1199, 2026 WL 654448 (E.D. Cal. Mar. 9, 2026), *report and recommendation adopted*, 2026 WL 825717 (E.D. Cal. Mar. 25, 2026); *Gurrola v. Cruz*, No. 1:25-cv-02078, 2026 WL 494478 (E.D. Cal. Feb. 23, 2026), *report and recommendation adopted*, 2026 WL 622124 (E.D. Cal. Mar. 5, 2026); *Gutierrez Gomez v. Lyons*, No. 1:26-cv-00635, 2026 WL 1243441 (E.D. Cal. May 6, 2026), *report and recommendation adopted*, 2026 WL 1335805 (E.D. Cal. May 13, 2026).

Respondents have offered a factual and legal basis that, in their view, distinguishes this case. They contend that even if the court concludes that Petitioner is not subject to mandatory detention under § 1225(b), there is an alternative basis for his mandatory detention: 8 U.S.C. § 1226(c), which mandates the detention of noncitizens convicted of any "crime involving moral turpitude." *See* 8 U.S.C §§ 1182(a)(2)(A)(i)(I), 1226(c)(1)(A). They invoke § 1226(c) based on Petitioner's 2008 conviction for hit-and-run, which they submit "may be a [crime involving moral turpitude]." Dkt. No. 13, at pg. 2. And they contend that if Petitioner wishes to argue against his detention under § 1226(c), he must first exhaust his administrative remedies—in this case, by requesting a hearing to challenge his classification under § 1226(c) pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)—before he can litigate that issue through a habeas petition. Dkt. No. 17.

After receiving Respondents' answer to the petition, the court issued an Order to Show cause, calling on Respondents to address two issues: (1) "whether section 1226(c) was ever asserted as a basis for Petitioner's detention prior to the filing of the Petition, including whether an initial custody determination conducted under 8 C.F.R. § 236.1(c)(8) and whether a Form I-286, Notice of Custody Determination, [was] served to Petitioner under 8 C.F.R. § 236.1(g)," and (2) if "section 1226(c) was not ever asserted prior to the filing of the Petition, . . . why it would be appropriate to expect Petitioner to

exhaust administrative remedies to test a government position that had not actually been asserted prior to the filing of the Petition." Dkt. No. 14.

The court thanks Respondents for their timely and candid response. In it, they concede that "section 1226(c) was not asserted as a basis for Petitioner's detention prior to the filing of the habeas petition," that "there was no initial custody determination conducted under 8 C.F.R. § 236.1(c)(8)," and that "no I-286 [was] served under 8 C.F.R. § 236.1(g)." Dkt. No. 17, at pg. 1. But they argue that Petitioner should still be required to exhaust administrative remedies before he can challenge his detention under § 1226(c). *Id.* at pgs. 2-3.

Before a district court reaches the merits of a habeas petition challenging immigration detention, it ordinarily considers whether the petitioner has exhausted available administrative remedies. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Exhaustion of administrative remedies may be required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (cleaned up). But as Respondents acknowledge, the exhaustion requirement in this context is prudential rather than jurisdictional. *See* Dkt.

No. 17, at pg. 2. Accordingly, the court may use its discretion to excuse exhaustion in situations where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury would result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (cleaned up).

The court elects to excuse exhaustion here. To begin with, there was no need for Petitioner to request a bond hearing. The government has taken the position that § 1225(b) requires Petitioner's mandatory detention, and in light of the government's position, it unquestionably would have been futile for Petitioner to have requested one. *See Vishal Vishal v. Albarran*, No. 1:26-cv-02361, 2026 WL 1898915, at *1 n.1 (E.D. Cal. July 1, 2026); *Lopez Lopez v. Warden*, No. 1:26-cv-03556, 2026 WL 1346694, at *1 n.1 (E.D. Cal. May 14, 2026).

But Respondents make the more nuanced argument that Petitioner should specifically have requested a so-called *Joseph* hearing to contest, before the agency, whether § 1226(c) applies to him. If DHS had issued a custody determination, served the required notice, and charged § 1226(c) as a basis for detention, Respondents' exhaustion argument would have force. As this court has recognized, when a petitioner "contends that his classification under [§ 1226(c)] is incorrect, a challenge of that nature must be raised, at least in the first instance, with immigration authorities rather than

with a court." *Rakeshkumar H.P. v. Warden, California City Corr. Ctr.*, No. 1:26-cv-02869-MWJS, 2026 WL 1146201, at *1 (E.D. Cal. Apr. 28, 2026).

But it makes little sense to require a petitioner to exhaust administrative remedies to challenge a classification under § 1226(c) when immigration authorities have not classified the petitioner that way. That is precisely the case here. As Respondents have candidly acknowledged, Petitioner was not provided with any information that might have placed him on notice that he was detained pursuant to § 1226(c) prior to the filing of his habeas petition. DHS has only charged that Petitioner is detained under § 1225(b). And as Petitioner persuasively observes, DHS knew how to assert § 1226(c) as an alternative basis for detention if it wished to do so in his administrative proceedings. Dkt. No. 18, at pg. 6. It did not do so. The court therefore waives the exhaustion requirement.

That leaves only the merits of Respondents' § 1226(c) argument. They contend that Petitioner's 2008 hit-and-run conviction "may be a [crime involving moral turpitude]" under Ninth Circuit law. Dkt. No. 13, at pg. 2 (citing *Conejo-Bravo v. Sessions*, 875 F.3d 890, 894 (9th Cir. 2017), for the proposition that under "the modified categorical approach," a noncitizen's hit-and-run conviction under California law constituted a crime involving moral turpitude). The Ninth Circuit has indeed concluded that under certain circumstances, a conviction under Cal. Veh. Code § 20001(a) *can* constitute a crime involving moral turpitude. *Conejo-Bravo*, 875 F.3d at

893-94. But such a conviction "is not *categorically* a crime involving moral turpitude." *Cerezo v. Mukasey*, 512 F.3d 1163, 1169 (9th Cir. 2008) (emphasis added).

Section 20001(a) of the California Vehicle Code is, however, "divisible into several crimes, some of which may involve moral turpitude and some of which may not." *Id.* at 1169. And in order to determine whether the crime of conviction was one involving moral turpitude, there must be sufficient evidence in the record for the court to divide the statute and apply the "modified categorical approach." *See Conejo-Bravo*, 875 F.3d at 893 (analyzing the factual admissions in the noncitizen's plea agreement to determine whether Petitioner's conviction under Cal. Veh. Code § 20001(a) constituted a crime involving moral turpitude); *see generally Cerezo*, 512 F.3d at 1169 (explaining that under the modified categorical approach, courts "examine certain judicial records to determine whether a defendant was necessarily convicted of the elements of the federal generic crime"); *Parilla v. Gonzales*, 414 F.3d 1038, 1043-44 (9th Cir. 2005) (detailing the types of evidence a court may consider in applying the modified categorical approach). But here, Respondents have offered no information about the nature or circumstances of Petitioner's conviction aside from the generalized fact of the conviction itself—which perhaps explains why even they stop short of asserting that § 1226(c) definitely applies. *See* Dkt. No. 13, at pg. 23. Without any additional information, the court cannot conclude that Petitioner was convicted of a crime of moral turpitude under either the categorical or modified categorical approach. *See Cerezo*, 512 F.3d at 1169.

What follows? If Petitioner bore the burden of establishing that his conviction was not a crime of moral turpitude, then the inadequacies of the record would require the court to deny the habeas petition. And petitioners generally do bear the burden of making that showing, both in administrative proceedings and habeas petitions. But the Ninth Circuit has carved out a different rule when, as here, the modified categorical approach applies: in this context, the burden shifts to the government to prove that the conviction qualifies under the modified categorical approach. *See Tokatly v. Ashcroft*, 371 F.3d 613, 620-21 (9th Cir. 2004) (explaining that "under the 'modified' [categorical] approach," the government bears the "burden of proving that the conduct of which the defendant was convicted constitutes a predicate offense" under the INA); *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1163-64 (9th Cir. 2006) (applying the same standard when considering whether a conviction constitutes a crime involving moral turpitude); *Notash v. Gonzales*, 427 F.3d 693, 700 (9th Cir. 2005) (same); *see also Vasquez Cruz v. Barr*, No. 19-CV-05251, 2019 WL 6327576, at *5 (N.D. Cal. Nov. 26, 2019) (applying the same standard in the § 1226(c) context). And so the record ambiguities—which Respondents have chosen not to fill in—cut against the government and require that the habeas petition be granted. *See Suazo Perez v. Mukasey*, 512 F.3d 1222, 1227 (9th Cir. 2008) (observing that when "the record leaves unclear whether [a] conviction" qualifies as a predicate offense under the modified categorical approach, the court is "compelled to hold that the government has not met its burden").

There is a wrinkle. In a more recent decision, *Pereida v. Wilkinson*, 592 U.S. 224 (2021), the Supreme Court held that in the cancellation of removal context, under 8 U.S.C. §§ 1229a, 1229b, it is the noncitizen's burden to show that the modified categorical approach does not apply. That outcome is in tension with the Ninth Circuit's decision in *Tokatly* and its progeny. But Respondents do not argue that the theory or reasoning of *Pereida*—which arose in a different procedural setting from this case—is "clearly irreconcilable" with *Tokatly*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (recognizing that a lower court must follow circuit precedent unless "intervening Supreme Court authority is clearly irreconcilable with . . . prior circuit authority"). And as the Supreme Court has recently admonished, lower courts must not "violate[] the party-presentation principle" by deciding "a case different from the one" a party has advanced. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (cleaned up). Based on the limited arguments Respondents have chosen to make, therefore, the court must follow existing Ninth Circuit precedent.

It follows that Respondents bore and failed to meet the burden of showing that Petitioner is, under the modified categorical approach, subject to mandatory detention under § 1226(c). And because the court has rejected the other asserted basis for Petitioner's detention, § 1225(b), it will order Respondents to provide him with the bond hearing he is entitled to under § 1226(a).

## CONCLUSION

Given the foregoing, IT IS HEREBY ORDERED that the petition for writ of habeas corpus is GRANTED in part, to the extent Petitioner contends that he is entitled by statute to a bond hearing. Respondents are ENJOINED AND RESTRAINED from continuing to detain Petitioner unless they demonstrate, within seven days of the date of this order, that Petitioner has received a bond hearing before a neutral decisionmaker in accordance with 8 U.S.C. § 1226(a) and its implementing regulations. Respondents shall file a status report within ten days of the date of this order, confirming whether a bond hearing has been held and, if so, the outcome of that hearing.

The Clerk of Court is directed to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

DATED: July 23, 2026, at Honolulu, Hawaiʻi.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge